THE FIRST NATIONAL BANK OF BUFFALO, Respondent, *v.* WILLIAM H. WOOD, Appellant.

An accommodation indorser of promissory notes discounted by a bank cannot, in the absence of any special equities, require the bank — first, to resort to a mortgage on real estate held by it as collateral, before maintaining an action upon the indorsement. The fact that the avails of the note are passed to the credit of the maker to take up other paper, does not affect the rights of the bank in this particular

If the indorser desires the benefit of any security held by the creditor, he must first pay the paper, assert his right of subrogation, and himself enforce the security.

The fact that other parties occupy the same position, and are interested with him in enforcing the security, is immaterial. He is only entitled to such benefit as is conferred by the security as it is, and beyond this has no valid claim for protection

Defendant indorsed certain notes for the accommodation of D. which were discounted by plaintiff. In an action upon the indorsements defendant offered to show that plaintiff in its dealings with D. took upon discounts made for him more than lawful interest. *Held,* that as the offer embraced transactions with which defendant was not connected, it was too broad, and so was properly rejected.

(Argued November 26, 1877 ; decided December 11, 1877).

APPEAL from judgment of the General Term of the Superior Court of the City of Buffalo, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought against defendant as indorser of certain promissory notes made by one Devenport and discounted by plaintiff. The defendant was an accommodation indorser, which the plaintiff knew when it discounted the notes.

The answer sets up that previous to the making of the notes, Devenport had been a customer of the plaintiff, keeping a large account with it, and procuring loans and discounts of the plaintiff upon notes and other paper; that in 1869, Devenport made an arrangement for a line of discount with plaintiff to the amount of $4,000, and executed to the plaintiff a mortgage upon real estate to secure the payment of such discounted paper as he then owed the plaintiff, and such as should be hereafter discounted for him by the plaintiff, not exceeding $4,000 at any one time, and for all renewals or extensions of such paper, during the term of five years, from February, 1869; that the then existing debt of Devenport to plaintiff "was nominally and in form paid and retired by the assumed and pretended discount of" paper made by Devenport, or by him procured to be made and indorsed by others for his accommodation, the proceeds of which were credited him on plaintiff's books as an ordinary deposit; that the paper last mentioned was "nominally and in form paid" by the discount of other similar paper by plaintiff, which was credited on its books to Devenport as a deposit, against which he drew "for the purpose of going through the form of paying" the previous paper, his indebtedness to plaintiff being about the same amount at all times; that this course of business continued for five years, until February, 1874, when Devenport, being largely indebted to plaintiff on the paper discounted for him under said arrangement, made another arrangement with the plaintiff, by which his line of discount was to be extended to $8,000, and he

made a new mortgage to plaintiff upon the same real
estate as the first, as security for his then existing indebted-
ness to the plaintiff, and for future discounts, to the
extent of $8,000 dollars; that thereafter the plaintiff con-
tinued to discount for Devenport paper made or indorsed
by others for his accommodation from time to time,
the proceeds of which were credited him on the plaint-
iff's books, and used to take up other like paper which
had been discounted for him by plaintiff; that the amount of
his debt, though it may have varied from time to time,
yet was not materially reduced; that the defendant knowing
the facts aforesaid, and relying on the security of said mort-
gages, indorsed the notes in suit at Devenport's request, and
for his accommodation, without consideration, to be used by
him in his dealings with the plaintiff; that said notes were
"in form discounted" by the plaintiff, and the proceeds
credited to Devenport on its books "as a mere colorable de-
posit of money," from which other paper discounted previ-
ously for Devenport, by plaintiff, was "in form paid and
retired;" that when said notes in suit were discounted,
plaintiff knew that defendant was a mere accommodation
indorser, that Devenport was insolvent, and known to plain-
tiff to be so; and he continued insolvent until his death;
that said mortgages continued to be held by plaintiff, and
are ample security for the payment of said notes, and all
other indebtedness of Devenport to plaintiff; that besides said
notes a large amount of other paper has been discounted for
Devenport by the plaintiff, upon which other persons are
accommodation makers or indorsers for him, and which is
unpaid, and is secured by said mortgages. The answer also
alleges that the plaintiff, in the course of its dealings with
Devenport, took and received upon the discounts made for
him as aforesaid, interest at the rate of ten per centum per
annum. On trial the defendent, having proved the execu-
tion and delivery of the two mortgages, offered to prove the
other facts so set up in his answer as a defense to this action,
but the court decided that such facts did not prove, or tend

to prove any defense, or entitle the defendant to any relief, and excluded the evidence offered, to which ruling the defendant duly excepted.

Defendant gave in evidence an instrument executed by him releasing certain premises from the prior lien of a mortgage to him, so as to give a preference to the lien of one of the mortgages above mentioned, executed by Devenport to the plaintiff, upon the same premises, and offered to prove that prior to the execution of said instrument, and as part of the negotiation which resulted in its execution, and in consideration of the release therein contained, it was by parol stated and agreed by plaintiff that it would resort to said mortgage made by Devenport before suing defendant upon any note secured by that mortgage which defendant might indorse. This parol evidence was rejected by the court, on the ground that it would contradict and vary the terms of the instrument of release as well as the notes themselves.

*John Hubbell*, for appellant.   No action could be maintained upon the notes in suit, independent of the mortgage, as plaintiff, for the enforcement and collection of his debt, was be confined to it as the higher security.   (*At. Bk.* v. *Franklin*, 55 N. Y., 235; *Hill* v. *Bube*, 3 Kern., 563; 1 Bacon's Abr. 396, Title Assumpsit; Saunders on Pldgs. & Ev., Title Assumpsit; 1 Chitty on Pldgs., Title Assumpsit; *Andrews* v. *Montgomery*, 19 Wend., 163; *Hunt* v. *Amidon*, 1 Hill, 149; *Miller* v. *Watson*, 5 Cow., 196; *Tylee* v. *Yates*, 3 Barb., 228; *Landers* v. *Arie*, 10 S. & R., 320; *Codman* v. *Jenkins*, 14 Mass., 93; 4 Wend., 270; ·2 R. S., art. 5, title 2, part 3, § 153; *Eq. L. Ins. Co.* v. *Stevens*, 63 N. Y., 342; *Scofield* v. *Doscher*, 10 Hun, 582; Code, §§ 167, 274; *Wright* v. *Austin*, 56 Barb., 13, 18, 19; *Soule* v. *Ludlow*, 6 T. & C., 24; *Matthews* v. *Aiken*, 1 N. Y., 595; *Vartie* v. *Underwood*, 18 Barb., 561; *Hayes* v. *Ward*, 4 J. Ch., 122; 131; *N. J. Stbt. Co.* v. *Associates N. J. Co.*, 1 Hopk., 460; *King* v. *Baldwin*, 17 J. R., 384, 404; *Evertson* v. *Booth*, 19 id., 486–493; *Heriman* v. *Skillman*, 33 Barb., 378–384; *Warren* v.

*Beardsley*, 8 Wend., 199; *Cary* v. *White*, 52 N. Y., 138; *Pitts* v. *Congdon*, 2 id., 352, 354.) The offer to prove that plaintiff in its dealing with Devenport had taken and received from him excessive interest, was competent and material. (*In re Wild*, 11 Blatch. 252, 254.)

*George B. Hibbard*, for respondent. Defendant had no right to require plaintiff to resort to any collateral security it held. (*Ross* v. *Jones*, 22 Wal., 576, 592; *In re Babcock*, 3 Story, 393, 398, 399; *The Lee Bk.* v. *Kitching*, 11 Abb., 435; 7 Bosw., 664; *Land* v. *Sergeant*, 1 Edwds. Ch., 164, 167; *Warner* v. *Beardsley*, 8 Wend., 194; *Ruggles* v. *Holden*, 3 id., 216; *Lenox* v. *Prout*, 3 Wheat., 520; *Jones* v. *Tencher*, 15 Ind., 308; *Geddis* v. *Hawke*, 1 Watts. [Pa.], *Brooks* v. *Carter*, 36 Ala., 82; *Burtle* v. *Stevens*, 32 Ind., 25; *N. O. Canal Co.* v *Escoffie*, 2 La. Ann., 830; 1 Story's Eq. Jr., § 640; *Hayes* v. *Ward*, 4 J. Ch., 123, 132.) The matters offered to be proved, connected with the alleged taking of illegal interest were properly rejected. (*F. & M. Nat. Bk.* v. *Dearing*, 1 Otto, 29; *U. S.* v. *Lathrop*, 17 J. R., 3; *Toole* v. *Cook*, 16 How. Pr., 142; *Lasher* v. *Williams*, 55 N. Y., 619.)

MILLER, J. The defendant was an indorser upon the notes in suit, for one Devenport, who kept an account with the plaintiff, and had arranged for a line of discounts, which was secured by mortgages upon real estate. The defendant set up in his answer, and offered to prove that he indorsed said notes for the accommodation of the maker, without any security or protection whatever, except such as was afforded by the mortgages above mentioned, which by their terms were executed and delivered as security for paper of this character; that the plaintiff had full knowledge of the character of the indorsement, and knew that the defendant relied upon the mortgages as the primary fund out of which the debt represented by the notes was to be paid. That the plaintiff did not actually lend or advance any money to the

said Devenport on the pretended discounts of the said notes, or any of them, but they were passed to the credit of said Devenport as a mere colorable deposit of money, out of and from which other paper was in form paid and retired, and that the liability and indebtedness was a mere extension and renewal of the original indebtedness secured by said mortgage.

We think that the testimony offered established no defense to the action, and did not entitle the defendant to the equitable relief demanded by the answer. The defendant claims that the mortgage was the primary security for the indebtedness, and the notes mere collateral promises to pay the same debt or liability secured by a lien on the real estate, and no action can be maintained on the notes, but the remedy must be confined to the mortgage as the higher security. The authorities relied upon to sustain this position do not uphold the doctrine contended for in cases where commercial paper is discounted and collaterals taken to secure the same. The character of such paper is well understood, and it would be overthrowing long-established rules seriously affecting the rights and liabilities of parties, to hold that resort must be first had to a mortgage or other instrument taken as a collateral to secure the same. In such cases the money is not loaned on the mortgage, but it is given merely to make the notes discounted more safe and secure, and according to the intention of the parties is not to be considered as the principal debt. Much embarrassment and perplexing complications would arise, if holders of such instruments who had discounted paper upon the faith of such security should be compelled to resort to the same primarily for the collection of their demands. It would in fact throw the burden of a litigation upon the party who was intended to be relieved from the same, and tend to thwart the purpose in view. We have been referred to no authority which upholds and sustains any such principle.

While an accommodation indorser may be regarded as surety in some cases, and under certain circumstances, and

has all the rights applicable to that relationship, yet as between him and a *bona fide* holder where his liability has become fixed, he becomes the principal debtor, and if he desires the benefit of any security held by the creditor, he must pay up the debt, fulfill the contract and enforce the right of subrogation to the holder as to the securities held by him. (See *Ross* v. *Jones*, 22 Wallace, 576, 592; *In re Babcock*, 3 Story, 393, 398, 399.)

The indorser cannot compel the holder to sue the maker first, or to enforce his security, and in the absence of an additional and controlling equity, to resort to a collateral security. The uniform current of authority fully sustains the views expressed, and most of the leading cases bearing upon the question discussed, are so fully considered in the opinion of the General Term, that with perhaps some few exceptions further examination of the cases is not required.

As to the *Atlantic Bank* v. *Franklin*, (55 N. Y., 235; *Powers* v. *French*, 1 Hun, 582), and some other decisions cited in connection with them to sustain the position that the plaintiff was not entitled to the rights of a *bona fide* holder without notice, by passing the proceeds of the discount to Devenport's credit, it is perhaps sufficient to say that they are not in point, and each of them presents entirely a different state of facts from that which arises in the case at bar. The notes in question were used by Devenport in his dealings and business with the plaintiff, and there is no valid ground for the assumption that the discount of them was fictitious, or a mere matter of form, or that the business was in any respect conducted differently from the ordinary and accustomed mode pursued in similar transactions.

Several cases are cited by the appellant's counsel which were not especially considered by the General Term, to sustain the doctrine that a surety may compel the creditor to sue for and collect the debt of the principal debtor, or to exhaust his collateral before resort is had to the surety. (*Wright* v. *Austin*, 56 Barb., 13; *Soule* v. *Ludlow*, 6 N. Y. [T. & C.], 24; *Matthews* v. *Aikin*, 1 Comst., 595.) In each

of those there was some special equity, or some agreement which took them out of the general rule herein before referred to, and which does not in any way interfere with the same. Under circumstances like those here presented, it can scarcely be claimed that the surety would be entitled to the enforcement of the rule contended for, without an offer on his part to pay the expenses which might necessarily be incurred by this course of procedure.

The remedy of the defendant, in accordance with the views expressed, clearly was to pay up the indebtedness to the plaintiff, thus asserting his right to be subrogated, and to take under his control and enforce the securities in question. The fact that other parties besides the defendant occupied the same position as he did, and were interested to the same extent, or in a similar manner in enforcing the security, presents no valid objection to requiring that the defendant should adopt such a course, for he could only avail himself of such benefit as is really conferred by the securities, and that they are an advantage to some one else besides himself, does not impose upon the plaintiff the costs and expense of prosecuting them before bringing an action against the indorser. The defendant in claiming the right of subrogation can only take the securities as they actually are, with their burdens and advantages, and beyond this he has no rights and no valid claim for protection.

The offer of the defendant to prove the taking of excessive interest in the transactions between the plaintiff and Devenport, and a greater rate than is allowed by the laws of this State, was properly refused. The proposition embraced transactions with which the defendant was not connected, and therefore the offer was too broad and comprehensive. Had it been confined to transactions between the plaintiff and Devenport, with which the defendant was connected, and to the notes indorsed by him, a more serious and difficult question would arise, but in the form in which the offer was made the point raised is not in the case.

The alleged parol agreement in regard to the release, prior

to its execution, was properly excluded by the court for the reason that it would contradict and vary the terms of the release as well as the notes.

No other question raised demands discussion, and the judgment should be affirmed, with costs.

All concur, except CHURCH, Ch. J., absent.

Judgment affirmed.